IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:                                          CASE NO. 23-01332 (ESL)

ALEXANDER FRED SÁNCHEZ and                      CHAPTER 13
LOURDES LORENZO LUACES DÍAZ

        Debtors

<u>OPINION AND ORDER</u>

This case is before the court upon the *Application for Compensation for [Attorneys'] Fees* (the "*Application for Compensation*", dkt. #46) filed on October 11, 2023, by former counsel for Debtors, Alexandra Bigas Valedón, Esq., of Modesto Bigas Law Office ("Attorney Bigas"), as amended (dkt. #66, 93).

Factual and Procedural Background

Attorney Bigas filed the *Application for Compensation* (dkt. #46) in the amount of $4,200.00 for attorney's fees, less $1,000.00 already paid, for a balance of $3,200.00 (dkt. #46). A statement with a description of the services rendered was attached to the *Application for Compensation* (<u>id.</u>, pp. 5-7). On November 1, 2023, Debtors filed a *pro se* opposition to the *Application for Compensation* (the "*Opposition*"), questioning the hours claimed for services rendered, the existence of a services contract, and the competence of counsel in rendering professional services (dkt. #56). Debtors understand that the $1,000.00 already paid should be enough to compensate Attorney Bigas for her services. The court scheduled an evidentiary hearing to consider the *Application for Compensation* and the *Opposition* for December 19, 2023 (dkt. #58).

Attorney Bigas filed a response to the *Opposition* on November 17, 2023, setting forth her explanation of the views expressed by Debtors (dkt. #66), as well as an *Amended Application for Compensation for [Attorneys'] Fees* (the "*Amended Application for Compensation*") requesting payment of a reduced fee of $3,900.00, less the $1,000.00 already paid, for a balance of $2,900.00 (dkt. #67). On December 8, 2023, Chapter 13 Trustee Osmarie Navarro, Esq.

("Trustee Navarro") filed her position as to each fee entry contested by Debtors, stating that there are important issues raised by Debtors in their *Opposition* that should be considered, that the trustee lacks information to determine the veracity of Debtors' comments and the response by Attorney Bigas but agrees that certain entries concern clerical matters and not Attorney Bigas' services (dkt. #82). Notwithstanding, Trustee Navarro clarified that the proposed – and now confirmed – plan is sufficiently funded to pay Attorney Bigas' fees (id.). On December 18, 2023, Debtors filed a statement regarding Attorney Bigas' *Amended Application for Compensation* (dkt. #84), reiterating their position but stating that, to avoid further anguish, they consent to the court allowing the same and to vacate the hearing. The court denied Debtors' request to continue the hearing and excused their appearance (dkt. #85).

On December 18, 2023, Attorney Bigas filed an *Amended Application for Compensation for [Attorneys'] Fees* (the "*Second Amended Application for Compensation*"), reducing the requested compensation to $3,300.00, less the $1,000.00 already paid, for a balance of $2,300.00 (dkt. #93).

<u>The Hearing</u>

An evidentiary hearing was held on December 19, 2023. Current counsel for Debtors, Rosana Moreno, Esq., stated that she would not be involved in the controversy concerning Attorney Bigas' fees and that Debtors agree to whatever amount the court determines (*Unofficial Windows Word Transcript of December 19, 2023, Hearing*, dkt. #110, p. 3, lines 9-12). Attorney Bigas informed that the *Second Amended Application for Compensation* is for a lesser amount to conform with the objections raised by Trustee Navarro (id., p. 3, lines 15-18).

Trustee Navarro stated her position as trustee and vigilant of the integrity of the system (id., pp. 3-5, lines 19-11). Trustee Navarro stated that the issues before the court are sensitive and depend substantially on the veracity of the two sides of the story (id.). To "determine credibility of the parties[,] [b]oth parties need to be present" (id., p. 4 lines 14-15). Trustee Navarro highlighted the statements in Paragraph 16 of Debtors' *Opposition* at dkt. #56, that is, "[s]he never intervened on our behalf in any meetings of creditors; she never spoke. She limited herself to

writing on a piece of paper some of the answers we should give" (id., p. 4, lines 23-24), and the response by Attorney Bigas, "[i]n response to allegation 16, we only intervene if debtors do not understand the question or if there is a doubt that needs to be clarified. [This is a normal] procedure. The legal representative talks if the trustee allows it or asks for our intervention." (id., p. 4, lines 26-27). Trustee Navarro stated that a debtor's attorney should not be allowed to influence the answers of a debtor at a 341 meeting. Trustee Navarro also stated that the events at the 341 meetings of creditors held showed Debtors did not provide all relevant information regarding their financial affairs and that Attorney Bigas accepted not having all the information of Debtors' corporations in order to accurately file their schedules (id., p. 4, lines 4-11 and 16-18). Trustee Navarro also noted that Debtors claim that Attorney Bigas was not present at some of the meetings for which counsel requests compensation (id., p. 5 lines 8-10). Trustee Navarro also stated that "lack of effective communication, lack of competence, lack of diligence and lack of candor with the Court as providing[sic] paragraph 16 of that I quoted. […] sister counsel invested hours in preparation, but the case, when filed, was not ready. Sister Counsel did not have the complete information of Debtors financial affairs … Sister Counsel Bigas filed many amendments to correct the information and after debtors filing … they have amended schedules" (id., p. 5, lines 23-28). Notwithstanding, Trustee Navarro stated that the court is to determine whether Attorney Bigas should be compensated for those services.

Attorney Bigas accepts that she was wrong when she prompted codebtor Alexander Fred Sánchez to answer the same as before, but she was responding to his inability to answer the trustee's questions at the 341 meeting (id., pp. 5-6, lines 12-24). Attorney Bigas reiterated her professional duty to proper disclosure and representation but admitted that she should have verified all bank accounts and that not all services performed were detailed in the work logs submitted to the court at dkt. #93 (id.).

Although not addressed at the hearing, the court notes that Debtors did question in their *Opposition* the terms of any agreement for the rendering of services by Attorney Bigas. In Paragraph 2 of their *Opposition* at dkt. #56 they stated that they "do not remember signing a

proper services contract with explanations of the process. If we did sign, we hereby declare that this attorney never explained the contents of the agreement, nor its form of compensation should the case not progress as expected by her." (dkt. #56, p. 1, ¶ 2). Attorney Bigas stated in her response to the *Opposition* that Debtors were aware of the form disclosing compensation and the fees to be collected, which were expected to be in the amount of $4,000.00, to be paid through the payment plan (dkt. #66, p. 1, ¶ 1(b)). There is no reference to a services contract, nor was evidence of the same submitted to this court.

The court notes that the Chapter 13 plan dated December 19, 2023 (dkt. #95) was confirmed on February 1, 2024 (dkt. #109).

Jurisdiction

The Court has jurisdiction pursuant to 28 U.S.C. § 1334(b) and 157(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(1) and (b)(2)(A). Venue is proper under 28 U.S.C. §§ 1408 and 1409.

Applicable Law and Discussion

There is a clear animosity between Debtors and their former counsel's representation of their interests in this bankruptcy case. Although unpleasant and difficult, this is not a strange scenario as there is an inherent tension between the lawyer's interest and those of the client. See *e.g.*, Jean Braucher, Counseling Consumer Debtors to Make Their Own Informed Choices—A Question of Professional Responsibility, 5 Am. Bankr. Inst. L. Rev. 165 (1997). Although the conflict was revealed through an application for compensation, the key issue is not the amount of reasonable compensation that should be allowed, but the ethical and professional responsibilities of a debtor's counsel. The latter may affect the first.

The court starts with the following preamble to place the controversy in the proper perspective:

Attorneys have extraordinary and oftentimes very far-reaching professional duties and responsibilities. Attorneys have a specific duty to provide competent and zealous legal representation and counseling to their clients, and concomitantly they must serve as respectful and vigilant officers of the courts. Additionally, attorneys, as public citizens, have a dual responsibility to promote the public good, the law

itself, and also their time-honored legal profession. As private citizens and human beings, attorneys also have familial and community responsibilities that must be balanced with their practice. Without proper balance in these areas, serious potential professional pitfalls and traps exist for unwary or inattentive attorneys.

Promoting, fostering, and actually balancing and accomplishing these intrepid professional and private duties and responsibilities present awesome challenges, especially when confronted with the many inherent competing and countervailing tensions that frequently exist in the legal profession and the private lives of attorneys. Attorneys face multifaceted and sometimes conflicting duties and responsibilities. Fortunately, general ethical roadmaps exist to assist and direct attorneys in navigating them through complicated, difficult, and, seemingly at times, irreconcilable professional and economic conflicts. For example, the Model Rules of Professional Conduct and the Rules of Professional Conduct promulgated by each state's bar association, among other authoritative sources, assist attorneys in launching and safely arriving at appropriate ethical and economic destinations and decisions without undue fear of disciplinary complaints and public and/or private criticisms.

. . .

Section 329 of the Code governing the relationship between debtors and their attorneys is to protect debtors and the estate and to avoid serious potential for overreaching by the debtor's attorney. To fulfill these purposes, a court's determination of the reasonableness of compensation under section 329 sometimes requires a holistic review of the attorney/debtor relationship. The attorney-client relationship is essentially contractual with outward boundaries set by the attorney's ethical obligations (e.g., competence, scope and objections of representation, diligence, communication, conflict of interest, candor, and truthfulness in statements).

Hon. David S. Kennedy and Vanessa A. Lantin, Litigation: Professionalism: Maintaining the Professionalism and Competence of a Lawyer in Bankruptcy Litigation When Compensation Becomes a Problem and Related Matters, 13 J. Bankr. L. & Prac. 5 Art. 2 (2004).

Although Debtors have opted not to continue opposing the compensation requested by Attorney Bigas, albeit with reservations due to alleged emotional reasons, the issue of attorney's fees is subject to court review for reasonableness irrespective of whether the debtor agrees with the fee amount. See e.g., In re Parrilla, 530 B.R. 1, 10 (Bankr. D.P.R. 2015). This court stated the following in In re Pereira Santiago, 457 B.R. 172, 174-175 (Bankr. D.P.R. 2011):

The legal profession is largely self-governing. See Preamble to Model Rules [¶10]. Such autonomy carries special responsibilities. However, ultimate authority over the legal profession is vested upon the courts. Courts have a duty to uphold and enhance the image of justice. Such authority and responsibility are the basis for the court's inherent power to oversee the conduct of attorneys appearing before them. Chambers v. NASCO, Inc., 501 U.S. 32, 43–45, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991); In re Nguyen, 447 B.R. 268, 280 (9th Cir. BAP 2011). The enforcement of ethics is necessary to preserve the decorum of the court and the respectability of the legal profession. Ex parte Burr, 22 U.S. 529, 9 Wheat. 529, 530, 6 L.Ed. 152 (1824).

Pursuant to Section 330(a)(4)(B) of the Bankruptcy Code, 11 U.S.C. § 330(a)(4)(B), in a Chapter 13 case "the debtor's attorney may receive reasonable compensation for representing the interests of the debtor that are related to the bankruptcy case. See Allan N. Resnick & Henry J. Sommer, 3 Collier on Bankruptcy ¶ 330.03[1][b][v] (16th ed. 2014)." In re Parrilla, 530 B.R. at 11. Prepetition counseling is an integral part of bankruptcy assistance and the terms of the same must be in a written contract.

There is no question that a debtor's attorney is a debt relief agency, that the debtor is an assisted person, and that the advice given pre-petition and post-petition by the attorney is bankruptcy assistance as those terms are defined in 11 U.S.C. §§ 101(12A, 3, and 4A). Debt relief agents, that is, debtor's attorneys, are subject to statutory requirements, disclosures, and restrictions as these are established in 11 U.S.C. §§ 526, 527, 528. These sections intend to protect assisted persons from abusive practices by requiring "debt relief agencies to disclose specific information about the bankruptcy process to consumer debtors, whose frequent ignorance and confusion could subject them to easy deception." In re Rodríguez Pérez, 2018 WL 3655656, *6 (Bankr. D.P.R. 2018). Since the court is not privy to the written contract required by Section 528, it cannot determine if the disclosures required by Section 527 were made or if the restrictions outlined in Sections 526 were or were not committed.

Although Attorney Bigas did provide services to Debtors and has candidly and openly addressed the allegations made by them, the evidence before the court does not show, considering the totality of the circumstances in this particular case, that she met all the rigorous standards regulating debt relief agencies under the Bankruptcy Code, particularly demanding and reviewing

all relevant documentation for filing the bankruptcy case and effectively communicating with her clients as required by Rule 1.4 of the ABA Model Rules of Professional Conduct, which apply in this district.

Conclusion

In view of the foregoing, the court approves the *Second Amended Application for Compensation* in the total amount of $2,000.00, of which $1,000.00 was already paid, for a balance of $1,000.00 to be paid by the Chapter 13 Trustee under the confirmed plan. Considering her years of experience in bankruptcy matters, the court admonishes counsel to engage in stricter protocols with prospective and current bankruptcy clients.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 30th day of April 2024.

Enrique S. Lamoutte
United States Bankruptcy Judge